UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRINA MORRIS,<br><br>Plaintiff,<br><br>v.<br><br>AETNA LIFE INSURANCE COMPANY<br><br>Defendants. | Case No. 8:20-cv-00821-SB-GJSx<br><br>**FINDINGS OF FACT AND CONCLUSIONS OF LAW**<br><br>Trial: June 4, 2021 8:00 AM |

1

## INTRODUCTION

Plaintiff Irina Morris brings this action arising under the Employee Retirement Income Security Act (ERISA) of 1974 against Defendant Aetna Life Insurance Company. The parties filed an administrative record and concurrently submitted trial briefs. Dkt. Nos. 30 (AR), 32 (Pltf. Brief), 33 (Def. Brief), 40 (Plt. Reply), 41 (Def. Reply). Upon request of the Court, the parties submitted proposed findings of fact and conclusions of law. Dkt. Nos. 45-1, 46-1. The parties tried this case to the Court on June 4, 2021. Having reviewed the administrative record, the parties' timely filings, and counsel's argument at trial, the Court grants judgment in Aetna's favor and makes the findings of fact and conclusions of law below.

## FINDINGS OF FACT[1]

1. Irina Morris was an employee of Callidus Software, where she served as a principal consultant for software implementation. Dkt. No. 32-1, Declaration of Irina Morris (Morris Decl.) ¶ 2. Morris received a salary of $115,000 per year and was not paid on an hourly basis. See AR 421-30, 437; see Morris Decl. ¶ 2.

2. Through her employment, she enrolled in a plan administered by Aetna Life Insurance Company that provided long-term disability (LTD) benefits. Id. at ¶ 3.

3. Callidus's policy covered disability benefits for employees who became unable to perform their occupation due to sickness or injury for the first twenty-four months of their disability. After twenty-four months, to remain eligible for benefits, the employee must have been disabled from performing any occupation for which they were reasonably qualified. AR 2338-2431.

---

[1] The characterization of a finding as one of "fact" or "law" is not controlling. To the extent that a finding is characterized as one of "law" but is more properly characterized as one of "fact" (or vice versa), substance shall prevail over form.

4. The total long-term disability benefit under the plan was based on 60% of the insured's Monthly Predisability Earnings minus applicable offsets. AR 2420.

5. "Predisability Earnings" are defined as follows:

> This is the amount of salary or wages you were receiving from an employer participating in this Plan on the day before a period of disability started, calculated on a monthly basis.
>
> It will be figured from the rule below that applies to you.
>
> If you are paid on an annual contract basis, your monthly salary is 1/12th of your annual contract salary.
>
> If you are paid on an hourly basis, the calculation of your monthly wages is based on your hourly pay rate multiplied by the number of hours you are regularly scheduled to work per month; but not more than 173 hours per month.
>
> If you do not have regular work hours, the calculation of your monthly salary or wages is based on the average number of hours you worked per month during the last 12 calendar months (or during your period of employment if fewer than 12 months); but not more than 173 hours per month.

AR 2412-13.

6. The terms of the plan allowed Aetna to recover overpayments:

> If payments are made in amounts greater than the benefits that you are entitled to receive, Aetna has the right to do any one or all of the following:
>
> • to require you to return the overpayment on request;
> • to stop payment of benefits until the overpayment is recovered;
> • to take any legal action needed to recover the overpayment; and
> • to place a lien, if not prohibited by law, in the amount of the overpayment on the proceeds of any other income, whether on a periodic or lump sum basis . . .

AR 2409.

7. In February 2009, Morris took sick leave and underwent surgery and chemotherapy for cancer. Morris submitted an LTD claim to Aetna indicating that she could not return to work for at least three months because she was still completing chemotherapy. AR 447-49, 456.

3

8. Aetna subsequently approved Morris's claim and noted that her chemotherapy treatment was sufficiently debilitating to her cognitive and physical functionality (fatigue, weakness, nausea), which prevented her from performing the material duties of her own occupation as a consultant for her employer. AR 34, 42-44.

9. Two years later, on May 27, 2011, Aetna wrote to Ms. Morris, indicating that upon a complete review of her claim, it was determined that she had met the plan's definition of being totally disabled from performing any gainful occupation. AR 2181-82. Thus, according to the plan's requirements, she would continue to receive LTD benefits in the above-stated amount of $4,113.17 per month if she continued to meet the plan's definition of "disability." AR 2182.

10. In calculating that benefit, it appears that the Aetna claim representative conducted the calculation based on the assumption that Morris was paid bi-weekly, meaning that she received 26 paychecks a year. *See* AR 34 ("$4791.67 bi-weekly x 26 = 124583.4"). In reality, Morris was paid semi-monthly, which amounts to 24 paychecks a year.

11. In September 2011, Morris applied for a home mortgage and asked Aetna to confirm her net benefits in the amount of $4,113.17 per month in order to verify her income. Morris Decl. ¶ 4. Aetna confirmed her benefit and that this income could continue through October 2024, subject to the terms and conditions of the plan. AR 154.

12. In the subsequent years, Morris included the benefit amount in her income when filing her taxes, participating in a divorce mediation, and refinancing her home. Morris Decl. ¶¶ 5-6. She again confirmed her benefit amount with Aetna in order to verify her income for the 2012 refinance of her home. AR 26.

13. In late 2018, Morris was diagnosed with a growth in her right lung, and underwent a wedge resection to remove the growth. AR 5. Aetna then recommended the claim be transferred to their "extended duration unit." *Id.* The original miscalculation was discovered upon the transfer.

1       14.    On February 25, 2019, Aetna wrote another letter to Morris concerning repayment of the overpaid benefits. AR 356. Aetna confirmed Morris's monthly pre-disability earnings were in fact $9,583.34, and informed Morris that she owed $56,478.17, the amount of overpayment as a result of the calculation error. *Id*. Aetna began reducing and withholding Morris's monthly benefits to recoup the overpayment, recovering a sum of approximately $56,063. *See* AR 2432-33, Morris Decl. ¶ 13.

      15.    On April 12, 2019, Morris appealed Aetna's decision to reduce her LTD benefits based upon its miscalculation. AR 1929-31. Morris argued that she had detrimentally relied upon Aetna's overpayment for nearly a decade. *Id.* at 1931. Morris ultimately demanded that Aetna review her claim and reverse its decision to withhold or reduce benefits. *Id.*

      16.    On April 18, 2019, Aetna wrote to Morris that it had completed its review of her appeal and would proceed with its original decision to correct the pre-disability monthly earnings and recover the overpayment. AR 361-63.

      17.    On April 29, 2020, Morris filed a Complaint in this Court, asserting a cause of action for ERISA benefits under § 502(a)(1)(B) and a second cause of action seeking equitable relief for an alleged breach of fiduciary duty under Section 502(a)(3). Dkt. No. 1 (Compl.).

## CONCLUSIONS OF LAW

      18.    This case is governed by the Employee Retirement Income Security Act, 29 U.S.C. Section 1001, et seq. because it involves an employee welfare benefit plan within the meaning of that statute.

**Standard of review**

      19.    A Court reviews a denial of ERISA benefits de novo unless "the benefit plan gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber*

*Co. v. Bruch*, 489 U.S. 101, 115 (1989). "When a benefits claim is subject to de novo review, a Court must review the claim by interpreting the governing plan documents without deferring to any party's interpretation." *Flynn v. Sun Life Assur. Co. of Canada*, 809 F. Supp. 2d 1175, 1183 (C.D. Cal. 2011).

20. Here, the plan contains a discretionary clause, which Aetna seeks to invoke. However, Morris argues that the provision providing discretion to Aetna is "void under California law." *Nagy v. Grp. Long Term Disability Plan for Emps. of Oracle Am., Inc.*, 183 F. Supp. 3d 1015, 1026 (N.D. Cal. 2016), *aff'd*, 739 F. App'x 366 (9th Cir. 2018); *see* Cal. Ins. Code § 10110.6(a) ("If a policy, contract, certificate, or agreement offered, issued, delivered, or renewed, whether or not in California, that provides or funds life insurance or disability insurance coverage for any California resident contains a provision that reserves discretionary authority to the insurer, or an agent of the insurer, to determine eligibility for benefits or coverage, to interpret the terms of the policy, contract, certificate, or agreement, or to provide standards of interpretation or review that are inconsistent with the laws of this state, that provision is void and unenforceable.").

21. The Court need not definitively resolve the applicable standard of review because Aetna prevails even under the less deferential de novo standard.

**ERISA § 502(a)(1)(B) claim**

22. Morris brings a claim according to ERISA §502(a)(1)(B). Pltf. Brief 10. That provision allos a participant to bring an action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." Morris argues that she is entitled to the high amount of benefits originally calculated by Aetna according to the plan. Pltf. Brief 10.

23. Here, the terms of the plan provide that the amount of benefits are dependent on "the amount of salary or wages you were receiving from an employer participating in this Plan on the day before a period of disability started, calculated on

a monthly basis." AR 2412-13.  It does not appear to be meaningfully disputed that Morris's salary prior to her disability was $115,000 a year (or $9,583.33 per month).  Because Morris was insured for 60% of her predisability monthly earnings, the plan unambiguously provides that her gross monthly benefit should be $5,750—not the gross benefit of $6,229.17 that she did receive and seeks here.  At the hearing, Morris's counsel argued that Morris was also compensated in other ways, such as bonuses.  But there is nothing in the record that shows what additional amounts, if any, were ever paid to Morris.  Indeed, Morris's counsel conceded that he could not provide a specific calculation that would result in the higher amount of benefits that Morris is claiming.

24.   Morris also argues that Aetna's calculation under the plan is incorrect because she lacked a formal annual contract and thus did not work on "an annual contract basis." Pltf. Brief 11.  At the hearing, Morris's counsel argued that she was merely an "exempt employee," and that the plan is ambiguous because it does not contemplate such a category.  But the plan's purpose is to provide benefits based on a worker's "salary or wages . . . calculated on a monthly basis." AR 2412-13.  And it seems plain that Morris had a contract with her employer that paid her an annual salary, such that the only proper way to calculate her monthly benefits was to divide her annual salary by twelve—i.e., the method provided for workers "paid on an annual contract basis." *Id.* ("your monthly salary is 1/12th of your annual contract salary").  The Court thus finds that the plan unambiguously treats Morris as an individual paid on an annual contract basis.

25.   Finally, Morris points to the *contra proferentum* rule of construction, which instructs that "if, after applying the normal principles of contractual construction, the insurance contract is fairly susceptible of two different interpretations, another rule of construction will be applied: the interpretation that is most favorable to the insured will be adopted." *Blankenship v. Liberty Life Assur. Co. of Bos.*, 486 F.3d 620, 625 (9th Cir. 2007).  But the plan is not ambiguous; indeed,

Morris has not explained how the plan is reasonably susceptible of an interpretation that would justify the higher payment she received.

26.    Thus, the record evidence shows that, under the clear terms of this plan, Morris is not entitled to the benefits she seeks. The Court therefore concludes that Morris is not entitled to relief under her ERISA § 502(a)(1)(B) claim.

**ERISA § 502(a)(3) claim**

27.    Morris alternatively argues that she is "entitled to the equitable remedies of estoppel, surcharge, waiver and reformation because Aetna breached its fiduciary duties" to her. Pltf. Brief 13. She brings this claim under ERISA § 502(a)(3), 29 U.S.C. § 1132(a)(3), which provides: "A civil action may be brought . . . by a participant . . . (A) to enjoin any act or practice which violates any provision of this title or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this title or the terms of the plan . . . ."

28.    The § 502(a)(3) claim, as alleged, requires a finding that Aetna breached a fiduciary duty owed to Morris.  In particular, Morris asserts that Aetna breached its fiduciary duty to her by miscalculating her benefits and then affirming her entitlement to those benefits, failing to inform Morris within a reasonable time of the miscalculation, and failing to conduct routine audits meant to catch overpayments. Compl. ¶ 69.[2] "In every case charging breach of ERISA fiduciary duty . . ., the threshold question is not whether the actions of some person employed to provide services under a plan adversely affected a plan beneficiary's interest, but whether that person was acting as a fiduciary (that is, was performing a fiduciary function) when

---

[2] Morris also argues that Aetna breached its fiduciary duties by calculating her benefits based on "an interpretation of ambiguous or non-existent Plan terms." Compl. ¶ 69.  But as discussed, the plan unambiguously provides that Morris was not entitled to her initial benefits amount and has always been entitled to Aetna's current calculation of benefits.

taking the action subject to complaint. *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000).

29. In the midst of the briefing in this case, the Ninth Circuit issued *Bafford v. Northrop Grumman Corp.*, 994 F.3d 1020, 1028 (9th Cir. 2021), which held that the calculation of benefits according to a pre-set formula was not a fiduciary function under ERISA. There, the sponsor of an ERISA pension plan delegated plan administration to a committee, who in turn contracted with a third-party plan administrator. The third-party administrator generated statements showing participants their anticipated monthly pension benefits when they retired. Prior to retirement, two participants requested such statements and received responses that "grossly overestimated the benefits" to which they would be entitled. *Id.* at 1024 ("Instead of the approximately $2,000 and $1,600 per month benefit Hewitt previously estimated, Bafford and Wilson were only entitled to receive $807 and $823 per month, respectively."). After the participants retired, they were notified that a mistake had occurred and that they were entitled to a much lower benefit.

30. The participants sued, alleging (among other things) that the sponsor, the committee, and the third-party administrator had breached their fiduciary duties. The Ninth Circuit affirmed the dismissal of the breach of fiduciary duty claims, holding that no fiduciary duty had been breached. *Id.* at 1028-29. The court emphasized the "fundamental precept that *discretion* is one of the central touchstones for a fiduciary role" and reasoned that calculating a benefit within a preset framework "does not involve the requisite discretion or control to constitute a fiduciary function." *Id.* at 1028. Consequently, the third-party administrator was not "performing a fiduciary function in miscalculating retirement benefits" and the sponsor and committee "did not breach a fiduciary duty by failing to ensure that [the administrator] correctly calculated Plaintiffs' benefits." *Id.*

31. The holding in *Bafford* defeats Morris's § 502(a)(3) claim. The alleged breach of fiduciary duties—resulting from the miscalculation, the repeated affirmation

of the miscalculation, and the failure to audit to catch miscalculations—all are inextricably entwined with the "calculation of . . . benefits," which is "a ministerial function that does not have a fiduciary duty attached to it." The actions of Aetna do not involve the sort of discretionary decision-making that typifies the fiduciary role. That fact defeats Morris's claim, which is contingent on the existence of a breach of a fiduciary duty.

32. Morris did not discuss *Bafford* in her briefing but her counsel addressed it at the bench trial. Counsel argued that *Bafford* is distinguishable because this case does not just involve a miscalculation but the ongoing payment of benefits according to that miscalculation for several years. But *Bafford* rejected the participants' argument the third-party administrator breached its fiduciary duty by "*repeatedly* providing Plaintiffs and the Class members with inaccurate information regarding the amounts of their pension." 994 F.3d at 1028 (emphasis added). At bottom, what matters is not the quantity of a defendant's acts but the nature of those acts. *Id.* ("the operative fact is that the function being performed was not fiduciary in nature"). Under *Bafford*, calculating benefits according to a formula is an act entirely ministerial in nature, and the Court does not find that such an act transforms it into a fiduciary function by mere repetition.

33. Morris's claims for estoppel and waiver fail for another reason. "The concepts of waiver or estoppel cannot be used to create coverage beyond that actually provided by an employee benefit plan." *Flynn v. Sun Life Assur. Co. of Canada*, 809 F. Supp. 2d 1175, 1187 (C.D. Cal. 2011). Here, there is no reasonable construction of the plan's language that results in the benefits that Morris seeks. Benefits not actually provided by the plan cannot be waived or estopped into existence.

34. The Court therefore concludes that Morris is not entitled to relief under her ERISA § 502(a)(3) claim.

## DISPOSITION

35.  Accordingly, in light of the above-state findings of fact and conclusions of law, the Court finds in favor of Aetna and orders that judgment be entered in favor of Aetna. Aetna is to provide a separate judgment by August 16, 2021. All objections are overruled.

Dated: August 9, 2021

_____
Stanley Blumenfeld, Jr.
United States District Judge